### R. M. THOMPSON ET AL. v. G. G. KELLEY ET AL.

No. 1660. ·Decided May 8, 1907.

**Appeal—Defendants Not Joining—Reversal.**

In a suit of trespass to try title, involving the location of boundaries of surveys owned by plaintiffs, two of the defendants appealed from a judgment fixing the boundaries of plaintiffs' land and recovering, in their favor, land claimed by appellants within such boundaries. They made appeal bond both to plaintiffs and to two codefendants who did not appeal, one of whom had judgment against plaintiff but plaintiff had judgment against the other. Held, that such proceedings brought all the parties before the Appellate Court, in such way as to give jurisdiction to render any judgment proper to relief to which appellants might be entitled, including reversal of the judgments in favor of or against the two parties not appealing if such relief required disturbing the boundaries fixed for them by the judgment in the trial court. (P. 539.)

Question certified from the Court of Civil Appeals for the First District, in an appeal from Wharton County.

*W. S. Brooks* and *N. A. Rector,* for appellants.—Where there are several parties plaintiffs and defendants to the judgment in the lower court, and some of the parties appeal and others do not, and the rights of each party to said judgment are dependent in any manner upon those of the others, the Appellate Court will treat the judgment as an entirety, and where a reversal is requested as to one it should reverse the judgment as a whole as to all the parties. Rev. Stats., art. 1337; Wootters v. Kauffman, 67 Texas, 497; Hamilton & Co. v. Prescott, 73 Texas, 565; Reed v. Cavitt, 30 S. W. Rep., 575; Naseworthy v. Draper, 29 S. W. Rep., 557; Ramirez v. Smith, 94 Texas, 192; Dickson v. Burke, 28 Texas, 118.

*T. D. Cobbs,* for appellee Olcott.—Even if the judgment in favor of

the appellee Olcott against the appellees Kelley and wife could be construed to be prejudicial to the appellants, they have waived all right to complain of same by failing to make assignments of error thereon. Rev. Civ. Stats., art. 1018; Lewis v. Steiner, 84 Texas, 364; Brown v. Elmendorf, 87 Texas, 58.

Appellees Kelley and wife having failed to appeal from the judgment against them in favor of appellee Olcott and having failed to make cross assignments of error, they can not now complain of the judgment in favor of Olcott against them, and the Court of Civil Appeals has no power on the motion of appellees Kelley and wife to reverse said judgment in favor of Olcott. Duren v. Houston & T. C. Ry. Co., 86 Texas, 290-292; St. Louis, A. & T. Ry. Co. v. Prather, 75 Texas, 53.

WILLIAMS, Associate Justice.—The Court of Civil Appeals for the First District certifies the following statement and question for decision:

"Appellees G. G. Kelley and wife, M. L. Kelley, brought this suit in the form of trespass to try title against O. P. Madray, J. H. Burns, John Ellison, John Bennett, R. D. Ragsdale, J. W. Ragsdale, J. R. Forgy, R. M. Thompson and F. P. Olcott. The lands sued for and described in the petition are two surveys of 640 acres each in Wharton County, patented to A. J. Dunlap. The amended petition upon which the case was tried in addition to the usual allegations in a suit of trespass to try title contains the following allegation:

"'Plaintiffs further aver that there is a dispute between the plaintiffs and certain of the defendants, to wit, J. R. Burns, J. R. Forgy, R. M. Thompson and F. P. Olcott, as to the true location of the boundary lines of said Dunlap surveys, and that a survey has been made under the previous orders of this court, for the purpose of locating said boundaries.'

"The defendant Thompson by his answer disclaimed title to any part of the A. J. Dunlap surveys, but asserted title to surveys Nos. 3, 5 and 7 in Wharton County patented by virtue of certificates Nos. 4242, 4243 and 4244 issued to the Gulf, Colorado & Santa Fe Railway Company. He set out the field notes of each of said surveys and its proper location upon the ground and averred that if any portion of the land described in plaintiffs' petition was included in the boundaries of the lands claimed by him he pleaded not guilty as to such portion, and prayed for judgment against plaintiffs and his codefendants fixing the boundaries and location of his lands as claimed in his answer.

"The defendant Forgy answered claiming surveys Nos. 4, 6 and 8, and alternative surveys to those claimed by his codefendant Thompson. In other respects this answer is similar to that of the defendant Thompson.

"The defendant Olcott answered by general exception and general denial and by special plea claimed title to surveys Nos. 35 and 37 in the name of the Houston & Texas Central Railway Company, and qualified his plea of not guilty to the extent that it was not intended to apply to any portion of the land described in plaintiffs' petition that might be included in the lands claimed by said defendant and de-

scribed in his answer. His prayer was for judgment against plaintiffs for cost, and for equity and for general relief.

"The defendant Madray by his answer disclaimed title to an undivided ⅞ of the lands claimed by plaintiffs, but claimed title as to the remaining ⅛ of said lands, and prayed for judgment for same against plaintiffs and his codefendants.

"Defendant Burns answered by general exception and general denial, and by special plea, in which he disclaimed title to the lands described in plaintiff's petition, except as to such portion thereof as might be included in the boundaries of 640 acres, known as survey No. 3, patented to Julia C. Mitchell, assignee of the Houston, East & West Texas Railway Company, to which survey said defendant claimed title.

"The defendants, R. D. and J. W. Ragsdale, who were tenants of the defendants Thompson and Forgy, disclaimed title to any of the lands involved in the suit.

"Defendants Ellison and Bennett filed no answer, and judgment was rendered against them by default on May 5, 1903, in favor of plaintiffs, for the title and possession of the land sued for.

"There is no plat in the record which shows the location of the several surveys, as claimed by the parties, with sufficient clearness to enable this court to accurately determine same, but it definitely appears that the land claimed by the defendant Burns is on the east side of the lower Dunlap survey, claimed by plaintiffs, and that the Gulf, Colorado & Santa Fe surveys Nos. 3 and 4, claimed by the defendants Thompson and Forgy, are on the west of said survey. In other words, the east line of the lower Dunlap is the west line of the survey owned by Burns, and the west line of the Dunlap is the east line of said surveys 3 and 4 owned by Thompson and Forgy. It also appears that the surveys claimed by the defendant Olcott are north of those claimed by the defendants Thompson and Forgy. There was no contention between plaintiffs and defendant Olcott as to the proper location of plaintiffs' east and west lines, but plaintiffs contended that their north line was so located as to embrace within the boundaries of their survey a small portion taken out of the southeast corners of the two surveys claimed by said defendant. The boundaries of the Dunlap surveys are not marked by any natural or artificial objects which can now be found, and can only be fixed by course and distance from other known points. These surveys are older than any of those claimed by the defendants, and plaintiffs are, under the undisputed evidence, entitled to recover the number of acres called for by the field notes of their patents, and any conflict with the lines of adjoining surveys must be determined in favor of plaintiffs. The lines of all of the surveys involved in the suit are straight lines, and the surveys are squares or parallelograms.

"It was agreed on the trial below, between plaintiffs and the defendants, Olcott, Burns, Thompson and Forgy, that the only issue in the case was the true location of the two surveys claimed by plaintiffs.

"Upon the final trial of the cause in the District Court, on March 15, 1905, judgment was rendered in favor of plaintiffs against all of the defendants, except the defendants Olcott and Madray, for the recovery of the lands sued for, and fixing the location and boundaries of said Dunlap surveys. Judgment was also rendered in favor of the defend-

ant Olcott that plaintiffs take nothing against him, and that he go hence and recover his costs, and in favor of defendant Madray against plaintiffs for the undivided ⅛ interest in the lands claimed by him.

"As located by this judgment, plaintiffs' surveys cover most of the surveys owned by defendants Thompson and Forgy on the west, and a small strip of the survey as claimed by the defendant Burns on the east. From this judgment the defendants Thompson and Forgy alone have appealed.

"The appeal bond is made payable to all the other parties to the judgment, but it is not claimed by appellants that the judgment of the trial court is erroneous except as to the location of the west line of plaintiffs' survey, but it is conceded that the location of the east and west lines of said surveys are dependent upon each other.

"At a former day of this term we entered a judgment reversing the judgment of the court below, as between appellants and the plaintiffs and the defendant Madray, and leaving the judgment in favor of defendant Olcott, and the judgment fixing the line between plaintiffs and defendant Burns, which were not appealed from by plaintiffs, undisturbed.

"Appellees Kelley and wife have filed a motion, which is now pending in this court, to correct our former judgment by reversing the case as to all of the appellees, including the defendants Burns and Olcott.

"Upon the foregoing statement we respectfully certify, for your determination, the following question:

"Has this court the power or jurisdiction, on this appeal, to reverse the judgment of the lower court as to the appellees Burns and Olcott, or either of them?"

In an amended certificate the court states some additional facts, and gives several plats showing more fully the situation of the several tracts of land referred to, but, as the question sufficiently arises on the original certificate, it is unnecessary to copy the amendment.

We answer that the appeal of Thompson and Forgy carried up the entire case, and brought before the Appellate Court all of the parties in such way as to give jurisdiction to render any judgment which may be proper to any relief against that judgment to which the appellants may show themselves to be entitled. As the verdict of the jury and the judgment based upon it fixed all of the boundaries, action of the Appellate Court, which may result in disturbing those boundaries in part, may affect the rights of parties depending on other lines than the one in which Thompson and Forgy are more immediately concerned. Hence their appeal may involve, as incidental to the relief to which they are entitled, a readjustment of other lines than the western boundary, and in determining that appeal the court has the power, all of the parties being before it, to determine also the effect of the decision upon the rights of those who did not appeal, and to render such judgment as will fully protect all concerned.