# JUNE, 1910.

## Newt. J. Reeves and L. T. Lester v. Mrs. Rhoda McCracken.

### No. 2073.    Decided June 1, 1910.

**1.—Vendor and Purchaser—Fraud—Agency—Rescission.**

The owners of land contracted to convey it to purchasers "or order" on receipt of the price agreed on in cash and notes. The latter agreed to sell to another for an advanced price, such purchase being induced by their fraud in pointing out a different tract of land as the one sold. By agreement of all parties, the original owners, who were ignorant of the fraud practiced on the last purchaser, conveyed directly to such purchaser, and received from her the cash and purchase money notes to which they were entitled under their agreement to convey, the remainder of the purchase price going to the intermediate purchaser who had perpetrated the fraud. In an action by the defrauded purchaser, against all the parties, to rescind the sale, cancel the notes and recover back the money paid, held, that the intermediate vendors were not agents of the original owners nor were the latter affected by their fraud; that by so carrying out their contract to convey for the price they had agreed to take the grantors did not become such sharers of the proceeds of the fraud as to adopt or become liable for it; that the form of the final conveyance was not material, nor the transaction thereby given any other effect than if the owners had conveyed to the parties with whom they had contracted and the latter had sold and conveyed to the plaintiff; that as against the original owners plaintiff was not entitled to rescind the sale or cancel the notes, or recover back the money paid to them. (Pp. 418–421.)

**2.—Vendor and Purchaser—Fraud—Rescission—Damages—Practice in Supreme Court.**

The measure of damages recoverable for fraud inducing plaintiff to purchase

a tract of land is dependent on whether rescission of the transaction is or is not awarded. Where rescission was decreed, and this part of the judgment was reversed and rendered by the Supreme Court, such relief being denied because the plaintiffs in error were not parties to the fraud, the recovery as against the other defendants, though they did not prosecute error, will be reversed and remanded, in order that the damages properly recoverable against them in a case where rescission is impossible may be assessed.   (P. 421.)

Error to the Court of Civil Appeals for the Second District, in an appeal from Deaf Smith County.

Reeves and Lester obtained writ of error on a judgment affirming a recovery against them and others at suit of Mrs. McCracken.

*R. A. Sowder* and *Turner & Boyce,* for plaintiffs in error.—There being no evidence whatever to show that the defendants Reeves and Lester had any connection with the negotiations for the sale of the land to plaintiff, and the evidence being undisputed that they had, in good faith, contracted to sell the land to Edwards, and the deed to plaintiff was made in pursuance to the terms of their contract with him, and they received only the consideration provided for by the terms of said contract, the court should have instructed a verdict for these defendants. American Natl. Bk. v. Cruger, 91 Texas, 446; Etheridge v. Price, 73 Texas, 597; Suderman-Dolson Co. v. Rodgers, 47 Texas Civ. App., 67; Sterling v. DeLaune, 47 Texas Civ. App., 470; 1 Am. & Eng. Enc. Law, 1196-1202; Cason v. Cason, 93 S. W., 93.

*W. H. Russell* and *Knight & Slaton,* for defendant in error, McCracken.—When Reeves and Lester released Edwards from complying with his contract to purchase the land and waived their right to require him to consummate his contract with them and accept a deed from them, and in lieu thereof executed a new deed direct to Mrs. McCracken for a different consideration from that agreed to be paid by Edwards, and accepted Mrs. McCracken's notes, they in effect made Edwards their agent and adopted his acts in making the sale to Mrs. McCracken. In other words, the situation of Reeves and Lester was just the same as if they had never had a contract with Edwards, but had adopted and consummated the sale which he had negotiated for them. American Natl. Bk. v. Cruger, 91 Texas, 446; Rutherford v. Montgomery, 14 Texas Civ. App., 319; 1 Am. & Eng. Enc. Law, 1192, 1196, 1199.

Untrue representations made by a vendor, although innocently made, will entitle the vendee to cancel the sale and recover the purchase money. Pendarvis v. Gray, 41 Texas, 326; Culbertson v. Blanchard, 79 Texas, 492; Lovelady v. Bennett, 26 S. W., 314.

Vendee's right to compensation from the vendor for misrepresentations is the same whether innocently or fraudulently made. Watson v. Baker, 71 Texas, 739; Cole v. Carter, 22 Texas Civ. App., 457; Loper v. Robinson, 54 Texas, 510; Cabaness v. Holland, 19 Texas Civ. App., 383.

*Barcus & North,* for appellee Edwards.

*Carl Gilliland,* for appellee Raysor.

MR. JUSTICE WILLIAMS delivered the opinion of the court.

Reeves and Lester, plaintiffs in error, are the only parties complaining in this court of a judgment recovered in the District Court and affirmed in the Court of Civil Appeals by Mrs. Rhoda McCracken, defendant in error, against them and also against C. E. Edwards and W. H. Raysor. The action was brought by Mrs. McCracken for the rescission of a contract of purchase and sale in which Reeves and Lester had, on September 23, 1906, conveyed to her a section of land, on account of fraud practiced on her by Edwards and Raysor, alleged to have acted as agents of Reeves and Lester, to induce her to buy. She prayed for the cancellation of the deed to her, offering to reconvey, and of two notes executed by her for deferred payments of purchase money, and for the recovery of money paid in cash as the other part of the consideration.

Taking the case as found by the Court of Civil Appeals, the facts are these: Reeves and Lester, the owners of the land, on August 22, 1906, entered into contract with Edwards to sell and convey it to him, "or order," by September 22, 1906, in consideration of $3760 —$1920 to be paid in cash and the balance in two notes for $920 each—and of Edwards' assumption of amount due the State for the land and of taxes for 1906 and subsequent years, allowing Edwards until September 22, 1906, to satisfy himself as to title and to complete the purchase. Edwards, acting in concert with Raysor, at once began his efforts to sell the section to Mrs. McCracken, and, by having shown to her another and much better and more valuable section as the one she was buying, induced her to enter into contract with him on August 23, 1906, to purchase that in question from him for a total consideration of $5120—$500 at signing of contract, $2700 at delivery of deed, and assumption of note for $1920, of amount due State on land, and of taxes for 1907 and thereafter, Edwards agreeing therein to execute deed by September 22, 1906. After Reeves and Lester had signed up and deposited in a bank a deed to Edwards, in accordance with their contract with him, but before it was delivered to him he requested them to make a deed to Mrs. McCracken, which they did, dating it August 22, 1906, reciting in it a consideration of $3200 cash and two notes for $960 each, one payable to Reeves and the other to Lester. It appears that Edwards for reasons which do not affect the questions now before us, abated $160 of the cash payment to be made by Mrs. McCracken, so that the cash actually paid by her was $3040. Reeves and Lester received $1920 cash and the two notes, the amount of the price Edwards was to pay them. Edwards received $1120 of the cash payment. "Until just before the deed was delivered to her," plaintiff, so she testifies, and we shall take it as true, "had no knowledge that Reeves and Lester had anything to do with it." They knew nothing of any fraud practiced on her, and themselves made no representation to her. There is not the slightest evidence that Edwards ever acted or assumed to act as their agent in any of his dealings with plaintiff, or that she regarded him as such, unless the deed which they executed

to her had the legal effect of constituting him such agent *pro hac vice*. We think it proper to add that we treat the fraud of Edwards and Raysor as established for the purpose of the decision by the verdict and the findings of the Court of Civil Appeals. They denied that they had been guilty of any fraud.

The judgment affirmed by the Court of Civil Appeals decreed the cancellation of the deed from Reeves and Lester to plaintiff and the notes from her to them, and the recovery by her from them as well as from Evans and Raysor of $3040, the entire amount paid to Reeves and Lester and to Edwards.

The theory upon which Reeves and Lester are held to be affected by the fraud of Edwards is one that necessarily assumes that he was their agent, or at least undertook to act as their agent, in the transaction with plaintiff, and that Reeves and Lester had accepted the benefit of his action in their behalf and thereby adopted it in its entirety, with all its imperfections and burdens as well as its benefits. The principle relied on is clear and well established and all we have to decide is whether or not the facts bring the case within its operation. Am. National Bank v. Cruger, 91 Texas, 446. We need go no further than that decision for the principles that control this question.

In no way that we can perceive did Edwards ever act for Reeves and Lester, or did they ever in any just sense, take any benefit from action of his in their behalf. Represented by other agents of their own selection, they made a contract to convey the land to him or "to his order" for a certain consideration. When he was ready to consummate that contract it suited him to have the conveyance made to plaintiff, to whom he had agreed to sell the land, and they very reasonably complied with his request, receiving and appropriating only the consideration they were to receive from him. They acted for themselves, Edwards for himself and plaintiff for herself, none of them supposing, or having reason to suppose, that any one was, or pretended to be, the agent of any other. It is argued that the legal effect of the transaction was to make Edwards the agent of Reeves and Lester in the sale to plaintiff, on the theory that, in its elements, it contained a rescission of the contract between Reeves and Lester and Edwards followed by a sale and conveyance to plaintiff of the title of the former, in negotiating which Edwards acted necessarily in behalf of those who were the ultimate vendors to plaintiff. But this wrests the facts from their clear and natural significance. Edwards did not surrender to Reeves and Lester his rights under his contract, nor did they surrender theirs to him. Each exercised his own, acting in his own right in consummating the final conveyance to plaintiff who accepted that conveyance, acting for herself. The transaction, as the parties actually conducted it, was a sale by Reeves and Lester to Edwards and another sale by the latter to plaintiff, both consummated by a conveyance from the first to the last. Let us suppose that Reeves and Lester had actually conveyed the land to Edwards and the latter had at once conveyed it to the plaintiff, receiving the money and notes stipulated in the consideration to be paid by her, and, out of the cash, had made Reeves and Lester the

payment due them, and had delivered to them plaintiff's notes in lieu of those he was to execute. Certainly there would have been no trace of agency in a transaction so conducted, the only difference between which and this would be that in this, Reeves and Lester may have formally assumed by express contract, contained in their deed, the relation of vendor and warrantor to plaintiff, which is a very different relation from that of principal to Edwards. Whether or not they would be liable as warrantors, in case the title should fail, for the entire amount paid by plaintiff—for that paid to Edwards as well as for that paid to them—is not the question. If so, their liability would result from the express stipulation in the deed and not from any principle of the law of agency. There is nothing technical in the principle discussed in Bank v. Cruger. It is designed to enforce duties and obligations a person voluntarily assumes in adopting and claiming the benefits of that which has been done by another in his behalf, and which he is free to adopt or reject as he may choose, and it denies to him the right to treat it as his own for some purposes and to repudiate it for other purposes. It forces upon no one the position and obligations of a principal for acts done by another purely in the exercise of his own right and in his own interest. By consenting to make the deed as Edwards desired it, Reeves and Lester adopted nothing he had done for them, for he had done nothing for them. They simply agreed to that mode of getting what they were already entitled to from Edwards, a specified sum in money and notes as the purchase money of the land. The parties agreed that the two trades should be thus executed, and plaintiff accepted Reeves' and Lester's deed as a fulfillment of Edwards' contract with her, not made as agent for Reeves and Lester, but in his own behalf, and executed her notes in lieu of those Edwards was to give. There is nothing in this to make applicable the principle relied on.

It is also sought to uphold the judgment on the principle decided in such cases as Pendarvis v. Gray, 41 Texas, 326; Culbertson v. Blanchard, 79 Texas, 492, to the effect that misrepresentation by a vendor, although innocently made, may be ground for rescission when they have misled the party entitled to rely on them. But plainly, this is based upon the assumption, just held to be groundless, that Edwards' fraud is to be imputed to Reeves and Lester, since there was no misrepresentation by the latter.

But it is argued that the fact that Mrs. McCracken believed that she was getting one tract of land while Reeves and Lester were selling and actually conveying another, even though they were ignorant of her mistake, constitutes ground for rescission. 24 Am. & Eng. Ency., 618, and cases cited. This might be true if the case were the simple one to which the principle relied on applies, in which Reeves and Lester would really be regarded as her vendors. But to treat them as such we should have to confine our attention wholly to the form of the final transaction, ignoring that substance of all their dealings regard for whichever controls the action of equity. If the deed alone were looked at, Reeves and Lester would appear to be the sellers of the land to her for the consideration expressed in it. In

fact, and in substance, they were Edwards' vendors and he was hers, the consideration recited in the deed including what Edwards was to get from her and what Reeves and Lester were to get from him. She never really contracted with Reeves and Lester. Her mistake was in her trade with Edwards. She consented to the mode of effecting the execution of her contract with Edwards as fully as did Reeves and Lester, and there is no fact to make them in any way answerable for the fraud practiced on her or for the mistake she made. The result is that a rescission does not and can not restore the status. The attempt to rescind makes Reeves and Lester responsible for money paid to Edwards and deprives them of that which they were entitled to as the consideration for their land. They received no more. When it is found that they were in no way privy to Edwards' fraud, there is no escape from the conclusion that .it would be highly unjust thus to take from them that which they were entitled to receive, in order to administer to plaintiff relief against Edwards.

No cause of action having been shown against Reeves and Lester, the judgments must be reversed and judgment must be rendered that plaintiff take nothing as against them, and this leaves the question as to the disposition to be made concerning the other defendants, Edwards and Raysor. The result of our judgment in favor of Reeves and Lester is that plaintiff must keep and pay for the land, and that her cause of action against the others is for damages caused by the fraud .perpetrated by them. In estimating such damages the land which plaintiff has obtained would have to be taken into account, her damage being her loss after deducting its value. It is obvious therefore that in changing the judgment upon the complaint of Reeves and Lester, injury would be done to the others if it were left standing against them. While they have not applied for a writ of error the application of Reeves and Lester brings before the court all parties so far as is essential to the rendition of the judgment the plaintiffs in error are entitled to, and the power to give relief to them by changing the judgment carries with it the power and the necessity to make such other changes therein as justice to the other parties demands. Thompson v. Kelley, 100 Texas, 539. The case was made and adjudged below upon the theory that plaintiff was entitled to rescission, and when this court holds otherwise the judgment must be changed to correspond with that holding. The judgment of this court, therefore, will be that the judgment of the Court of Civil Appeals be reversed and that it be here adjudged that plaintiff, Mrs. Rhoda McCracken, take nothing by her action as against Newt. Reeves and L. T. Lester, and that they go hence and recover of plaintiff all costs by them incurred in this action, and that the cause as between plaintiff and C. E. Edwards and W. H. Raysor be remanded to the District Court for further proceedings in accordance with this opinion, and that said Edwards and Raysor recover of plaintiff all costs of the appeal and the writ of error.

*Reversed and rendered in part;*
*Reversed and remanded in part.*