## OLD COLONY INSURANCE COMPANY *v.* KOLMER.

[No. 11,131. Filed June 27, 1923.]

1. APPEAL. — *Review.* — *Judgment.* — *Evidence.* — *Sufficiency.* — Where the only evidence submitted at the trial was an agreed statement of facts, the court on appeal must sustain the decision on which the judgment is based, if such facts, or any inference reasonably deducible therefrom, tend fairly to support it. p. 481.

2. INSURANCE. — *Policy.* — *Construction.*— *Ambiguities.*— While courts, in construing insurance contracts, must endeavor to give effect to the real intent of the parties, they will adopt that construction which is most favorable to the insured, where the contract is so drawn as to be ambiguous, or to require interpretation, or is fairly susceptible of two different constructions, so that reasonably intelligent men would honestly differ as to its meaning. p. 482.

3. INSURANCE. — *Automobile Theft Insurance.* — *Policy.* — *Construction.*—*"Equipment."*—A policy insuring the owner against loss, by theft, "upon the body, machinery and equipment" of

her electric automobile, *held* to cover the loss by theft of a rectifier used in charging the battery of the automobile with electric current, notwithstanding that the rectifier was not attached to the automobile or carried with it, but was kept in a garage; the term equipment meaning provision of whatever is needed for efficient action or service. p. 482.

From Marion Superior Court (A5,142); *Arthur R. Robinson,* Judge.

Action by May A. Kolmer against the Old Colony Insurance Company. From a judgment for plaintiff, the defendant appeals. *Affirmed.*

*Allen P. Vestal, Carl H. Reynolds* and *Donald W. Sessions,* for appellant.

*Pickens, Moores, Davidson & Pickens,* for appellee.

BATMAN, C. J.—In this action appellee recovered a judgment against appellant on an insurance policy by reason of the loss of a rectifier by theft. The cause was tried by the court, which overruled appellant's motion for a new trial, based on the grounds that its decision is not sustained by sufficient evidence, and is contrary to law. This action of the court constitutes the only error assigned on appeal.

The evidence consists of an agreed statement of facts, by which it appears, among other things, that on February 1, 1918, appellant entered into a contract of insurance with appellee, by which the former insured the latter for a period of one year, to an amount not exceeding $800, against loss "upon the body, machinery and equipment" of her electric automobile, occasioned by fire, lightning, theft, robbery or pilferage; that appellee kept her said automobile, the list price of which was $2,550, in a public garage in the city of Indianapolis; that appellee owned a certain rectifier, consisting of a slate switch board eighteen by thirty inches, and two and one-half inches thick, which was supported on an

iron pipe six feet high and one and one-fourth inches thick, standing on a rectangular base fourteen by sixteen inches in size. Attached to said slate switch board were volt and ammeter switches, circuit breaker, regulating reactance and controllers of metal, and a glass rectifier tube. Compensating reactance was inclosed in an iron case, which set on the floor nearby; that appellee kept said rectifier in the garage where she kept her automobile, and from which it was lost by theft on June —, 1918, while said policy was in force; that said rectifier was not attached to said automobile at the time it was stolen, but had been operated by appellee, in charging it with electricity, when she used the same; that said rectifier could be attached to said automobile, and when used by appellee was so attached by a charging plug and cable, and was used for the sole purpose of charging the same with electric current, and not in conjuction with any other automobile; that some of the electric automobiles used in Indianapolis are charged at public stations, but a considerable portion of such automobiles in said city are charged by means of such rectifiers; that said rectifier was never carried in or with said automobile, and there was no place in or on the same where it could be carried; that appellee sustained a loss of $427 by reason of its theft.

Appellant contends that the trial court erred in holding that the rectifier described above was covered by the policy in suit. This contention presents the only question for our determination. The only evidence submitted on the trial was an agreed statement of facts, but notwithstanding its form we must sustain the decision on which the judgment is based, if such facts, or any inference reasonably deducible therefrom, tend fairly to support the same. *West* v. *Graff* (1899), 23 Ind. App. 410, 55 N. E. 506;

*Timberlake* v. *Order of Golden Cross* (1911), 208 Mass. 411, 94 N. E. 685, 36 L R. A. (N. S.) 597.

The policy in suit is of considerable length, and was evidently prepared by appellant with much care, as it contains many provisions for its protection.

2. While courts, in construing such contracts, must endeavor to give effect to the real intent of the parties, as appellant contends, they will adopt that construction which is most favorable to the insured, where the contract is so drawn as to be ambiguous, or to require interpretation, or is fairly susceptible to two different constructions, so that reasonably intelligent men, on reading the same, would honestly differ as to its meaning. *Aetna Ins. Co.* v. *Strout* (1896), 16 Ind. App. 160, 44 N. E. 934; *Farmers' Mutual* v. *Reser* (1908), 43 Ind. App. 634, 88 N. E. 349; *Commercial Union, etc., Co.* v. *Schumacher* (1919), 71 Ind. App. 526, 119 N. E. 532; *Hessler, Admr.,* v. *Federal Casualty Co.* (1921), 190 Ind. 68, 129 N. E. 325. The reason for this rule is based on the fact, that insurance contracts are usually prepared by the insurer, who seeks to so frame them as to limit their scope, and hence it is only fair that any doubt as to the meaning of the language used should be resolved in favor of the insured, in order to avoid the injustice that would often result from a narrow and technical interpretation. *Federal Life Ins. Co.* v. *Kerr* (1909), 173 Ind. 613, 89 N. E. 398, 91 N. E. 230; *Globe, etc., Ins. Co.* v. *Hamilton* (1917), 65 Ind. App. 541, 116 N. E. 597; *Maxwell* v. *Springfield, etc., Ins. Co.* (1920), 73 Ind. App. 251, 125 N. E. 645.

With this rule in mind we have examined the policy in suit and find that it provides for insurance against loss by theft "upon the body, machinery and

3. equipment of the automobile." Had it merely provided for insurance against loss by theft of the automobile, or any of its parts, it would only be nec-

essary for us to determine whether the rectifier in question was a part of the automobile, which would have been a comparatively easy question. The policy, however, is not so written, but first enumerates the body and machinery of the automobile, which we know constitute a part thereof, and then includes its equipment, by which we must assume something was intended that did not pertain to either the body or machinery. We also observe that the term "equipment" is not limited or qualified in any way, except that it must be of the automobile. Had it been limited to equipment attached to the automobile, or carried therein or thereon, another comparatively easy question would have been presented. The policy, however, does not so provide, and hence, under the rule stated, we must hold that the trial court was justified in holding that the rectifier is covered by the policy, if the evidence shows that it was an equipment of the automobile in any reasonable sense.

After an extended search, we have not been able to find that the meaning of the term "equipment," when used in connection with an automobile, has ever been defined by any court, or that any rule has been established by which it may be determined when an appliance, used in connection therewith, falls within the meaning of such term. Under these circumstances we very naturally turn to the definitions found in the dictionaries, in determining the commonly accepted meaning of such term, as a basis for its application in the instant case. Webster's International Dictionary defines the verb "equip" to mean, "To furnish for service, or against a need or exigency; to fit out; to supply with whatever is necessary to efficient action in any way;" and the noun "equipment" to mean, "Whatever is used in equipping * * * the collective designation for the articles comprising an outfit." In the Century Dictionary the verb "equip" is defined as meaning, "To fit

out; furnish with means for the prosecution of a purpose; provide with whatever is needed for efficient action or service;" the noun "equipage" as meaning "An outfit; provision of means or materials for carrying out a purpose; furniture for efficient service or action; an equipment;" and the noun "equipment" as meaning, "anything that is used in or provided for equipping, as furniture," etc. It is stated in the instant case, in the agreement as to the facts, that the rectifier in question was owned by appellee and kept by her in a public garage where she kept her automobile; that it had been in use and operation by her in charging her said automobile with electricity, and when so used, it was attached thereto by means of a charging plug and cable; and that it was not used in conjunction with any other automobile. In addition to these facts, the trial court may have considered it a matter of common knowledge, that it is necessary to charge automobiles, such as appellee's, with electricity, in order to operate the same, and that this was done by means of a rectifier; and that some owners of such automobiles have them charged at public stations, while others have their own appliance for such purpose. In fact it was agreed on the trial that this was true in Indianapolis where appellee's automobile was located. In view of these facts, it is clear to us, in the light of the definitions cited above, that the trial court was justified in holding that the rectifier in question was an equipment of the automobile, and covered by the policy in suit, since that term was used therein, without restrictions or limitations.

Appellant, in an effort to lead the court to a different conclusion, has cited the following facts: That the rectifier was not attached to the automobile at the time it was stolen; that it was never carried with or in the same; that there was no place in or on said automobile

where it could be carried; that the list price of said automobile, as stated in the policy in suit, was $2550; that said rectifier was not purchased with the same, as a part of its equipment, and its cost was not included in said list price; and that rectifiers are not used for the sole purpose of charging electric automobiles. It is obvious that an appliance need not be attached to, or carried on or in an automobile, to be a part of its equipment, within the meaning of that term, as defined above by the authorities cited. A few illustrations may prove helpful. Most owners of automobiles carry an emergency jack, when on the road, for use in the event of deflated casings. This is certainly a part of the equipment of the automobile. Some owners also have other jacks, which they keep in their garages, with which to raise and support their automobiles from the floor, when left standing for a considerable time. Can it be said with reason, that the former is an equipment, while the latter are not, merely because one is carried with the automobile while the others remain in the garage? Formerly all automobile owners, and even now most of them, carry small hand pumps for the purpose of inflating their casings when on the road. These are evidently a part of the equipment of such automobiles. Some may have larger and more efficient pumps for such purpose, which are not carried in or on their automobiles because of their size. But can it be successfully urged, that because of the difference stated, the latter are not a part of the equipment of such automobiles? We are clearly of the opinion that it cannot be done, as to do so would give too much importance to a comparatively immaterial fact. Other illustrations might be drawn from the use of appliances for cleaning and lubricating, but more are unnecessary. As we have heretofore noted, the policy does not limit the equipment of the automobile covered thereby to such as may be

attached thereto, or carried therein or thereon, or to such as might be so carried in a place provided therefor. To so limit the policy would be to write something into it, which was omitted by the insurer when it prepared the same, a thing we are not permitted to do. We attach no importance to the fact that the rectifier was not purchased with the automobile, as a part of its equipment, as an appliance acquired subsequently, if of such a character and so used as to constitute an equipment, would be such notwithstanding that fact. As to the list price of the automobile, and the fact that rectifiers are not used for the sole purpose of charging electric automobiles, it suffices to say, that while such facts would constitute matters proper for the consideration of the trial court in reaching its conclusion, they are not conclusive.

As bearing on the intention of the parties to the policy in suit, the trial court may have believed that appellant knew, as a matter of common knowledge, that an electric automobile cannot be operated without being charged with electricity, and that many owners of such automobiles had or might have appliances for that purpose, and may have given weight to the fact that with such knowledge, appellant considered the equipment which it did not desire that the policy should cover, and only eliminated therefrom "robes, wearing apparel, personal effects, extra bodies,  *  *  *  tools and repair equipment," as therein specifically enumerated. That such was the intention of appellant, is a reasonable inference from the facts stated, since the policy was evidently prepared by it, and we must give effect to such inference on appeal. We conclude the court did not err in overruling appellant's motion for a new trial, and the judgment is therefore affirmed.